# In the United States Court of Federal Claims

No. 19-1116C

(Filed Under Seal: October 1, 2019)

(Reissued: October 9, 2019)

|  |  |  |
|---|---|---|
| **ORBITAL MAINTENANCE AND CONSTRUCTION CO.**, | ) ) ) | Post-award bid protest; standing |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **UNITED STATES**, | ) ) | |
| Defendant. | ) ) ) | |

Joseph A. Whitcomb, Whitcomb, Selinsky, PC, Denver, CO, for plaintiff.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Daniel J. McFeely, Procurement Counsel, District Contract Law National Practice, Office of General Counsel, United States Department of Veterans Affairs, Phoenix, AZ.

**OPINION AND ORDER**[1]

LETTOW, Senior Judge.

Plaintiff Orbital Maintenance and Construction Co. ("Orbital") protests a contractual award for pest-control services at the VA Greater Los Angeles Healthcare System to CDS Services, Inc. d/b/a/ Legion Pest Management ("CDS") by the United States Department of Veterans Affairs ("VA" or "the government"). As relief, Orbital requests that this court enjoin VA from proceeding with the commencement of the contract's performance, issue a declaratory judgment that the decision to award the contract to CDS was arbitrary, capricious, or contrary to law, instruct VA to terminate the contract award to CDS, re-evaluate the offers in accord with the

---

[1]Because of the protective order entered in this case, this opinion was filed initially under seal. The parties were requested to review this decision and provide any proposed redactions of any confidential and proprietary information. No redactions were requested.

law, order VA to pay damages to Orbital for its bid preparation and proposal costs, and grant any other relief the court may deem appropriate. *See* Compl. at 13-14, ECF No. 1.

The court concludes that Orbital has not satisfied the requisite standing to pursue this bid protest. Accordingly, defendant's motion to dismiss the complaint for lack of jurisdiction is GRANTED. Plaintiff's motion and defendant's cross-motion for judgment on the administrative record are both DENIED as moot.

## FACTS[2]

In August 2018, VA issued a request for proposals seeking contract services for the development, management, operations, and maintenance of pest control and removal at the VA Greater Los Angeles Healthcare System. *See* AR 10-72 to 73.[3] The solicitation stated that VA would enter into a single firm-fixed-price contract and that this procurement was set aside for a service-disabled, veteran-owned small business. *See* AR 10-73.[4] The only basis for the award was price, considered among responsible offerors. *See* AR 10-74 ("The [g]overnment will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the [g]overnment based on the factor of lowest price."). The proposal set a response date of September 4, 2018. AR 10-72.

After the issuance of the original proposal, VA made five subsequent amendments. The first amendment, issued on August 29, 2018, was meant to respond to vendor questions. *See* AR 11-117. Subsequently, on September 4, 2018, Precise Management, LLC filed a pre-award protest at the Government Accountability Office ("GAO"), arguing that the solicitation was vague and ambiguous. *See* AR 15. Responding to the protest, VA issued a notice of corrective action, averring it would amend the solicitation to cure the alleged deficiencies and requesting dismissal by GAO, *see* AR 16-243 to 244, which GAO granted, *see* AR 18-247.

The second amendment to the solicitation, issued on October 12, 2018, answered further vendor questions to eliminate ambiguities in the solicitation and extended the time for response until October 26, 2018. *See* AR 19-248 to 250. The third amendment, issued on October 22, 2018, answered additional vendor questions on the scope of work. *See* AR 20-277. On October 26, 2018, VA received three offers in response to the solicitation. *See generally* AR 21; AR 22;

---

[2] The following recitations constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to RCFC 52.1(a). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3] The government filed the administrative record pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). It is consecutively paginated, divided into 55 tabs, and consists of nearly 1,000 pages. Citations to the record are cited by tab and page as "AR ___-___."

[4] VA has a statutory mandate to set aside procurements for service-disabled, veteran-owned small businesses when certain conditions are present. *See* 38 U.S.C. § 8127.

AR 23.  Because CDS submitted the lowest-priced bid, VA awarded it the contract on December 17, 2018.  *See* AR 27-488.

On December 26, 2018, Orbital filed a protest with the agency of the contract and award decision "based on [CDS] not being properly licensed to legally service the contract."  AR 29-493.  In response, VA withdrew the contract award and planned to "revisit the contract award decision."  AR 31-498.  During its reconsideration, the contracting officer determined that "the solicitation was ambiguous regarding exactly which licenses offerors were required to possess to be eligible for contract award, and which licenses a contractor needed to possess during contract performance to meet VA's requirements."  Declaration of Kevin H. Vo at 6, ECF No. 14.  VA sought to address these issues with its final two amendments.  The fourth amendment, issued on April 9, 2019, had three purposes: (1) update the statement of work and qualifications; (2) update the instructions to offerors; and (3) update the evaluation section. AR 34-506.  The amendment set a due date for revised proposals of May 6, 2019.  AR 34-506.  On April 25, 2019, VA issued amendment five answering more questions from vendors and amending the statement of work.  S*ee* AR 37-545.  At no point was the basis for contract award amended, *i.e.*, the basis for contract award was always the lowest price.

In response to the amended solicitation, VA received three proposals.  The bidders, ranked from lowest to highest price, were: (1) CDS, *see* AR 41; (2) Epic Pest Control & Landscape Services, Inc. ("Epic"), *see* AR 40; and (3) Orbital, *see* AR 42.  After making a determination of CDS's responsibility, *see generally* AR 43, VA awarded the contract to CDS on June 10, 2019, *see* AR 44-746.  VA's determination of responsibility for CDS analyzed CDS's financial stability, performance history, integrity and business ethics, and technical equipment capabilities, among other qualifications, and determined that the vendor was "qualified and eligible to receive an award."  AR 43-682 to 683.

Orbital first filed a protest at GAO, *see* AR 49-758 to 767, but it was dismissed as untimely on July 18, 2019, AR 54-925.  Orbital then filed this post-award bid protest on July 31, 2019.  *See* Compl.  Orbital's motion for a temporary restraining order was denied by this court on August 2, 2019.  *See* ECF No. 16.

The government filed the administrative record on August 9, 2019.  Orbital submitted its motion for judgment on the administrative record on August 19, 2019.  *See* Pl.'s Mot. for Judgment on the Admin. R. ("Pl.'s Mot."), ECF No. 21.  The United States opposed this motion and filed a cross-motion for judgment on the administrative record and a motion to dismiss.  *See* Def.'s Cross-Mot. for Judgment on the Admin. R., Mot. to Dismiss, and Resp. to Pl.'s Mot. for Judgment on the Admin. R. ("Def.'s Cross-Mot."), ECF No. 22.  Orbital then filed its response and reply.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss and Resp. and Reply to Def.'s Cross-Mot. for Judgment on the Admin. R. ("Pl.'s Reply"), ECF No. 23.  Following the conclusion of briefing, *see* Def.'s Reply in Support of its Cross-Mot. for Judgment on the Admin. R. and Mot. to Dismiss ("Def.'s Reply"), ECF No. 24, a hearing was held on September 19, 2019 in Washington, D.C.  *See* Hr'g Tr. 3:4 to 56:17 (Sept. 19, 2019).[5]

---

[5]The date will be omitted from further citations to the hearing transcript.

**JURISDICTION**

The Tucker Act vests this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. 1491(b)(1).

Before reaching the merits, the court must determine whether Orbital has standing to challenge the contract award to CDS. As the plaintiff, Orbital has the burden of establishing standing. *See Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "A party seeking to establish jurisdiction under § 1491(b)(1) must show that it meets § 1491(b)(1)'s standing requirements, which are 'more stringent' than the standing requirements imposed by Article III of the Constitution." *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017) (citing *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)). To meet these more stringent requirements, a plaintiff must show that it is an "interested party," *Digitales Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012), and "that it was prejudiced by a significant error in the procurement process," *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009).

An interested party is an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by the failure to award the contract." *Weeks Marine*, 575 F.3d at 1359 (quoting *American Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)). In this case, Orbital was an actual bidder. *See* AR 42. Whether Orbital has a direct economic interest is at issue. To have a direct economic interest, Orbital must show that it had a substantial chance of winning the contract. *See Digitales*, 664 F.3d at 1384.

Additionally, Orbital must show prejudice. *See Labatt*, 577 F.3d at 1378. An interested party suffers prejudice from a significant procurement error when "but for the error, it would have had a substantial chance of securing the contract." *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018) (emphasis omitted); *see also Red Cedar Harmonia, LLC v. United States*, 144 Fed. Cl. 11, 21 (2019), *appeal docketed*, No. 2019-2449 (Fed. Cir. Sept. 27, 2019). The prejudice inquiry and the economic-interest inquiry must not be conflated—"an error [may be] non-prejudicial to an economically interested offeror." *CliniComp*, 904 F.3d at 1380. "Despite the potential relevance of prejudice in determining substantial chance, direct economic interest should still be evaluated separately from prejudice." *Veteran Shredding, LLC v. United States*, 140 Fed. Cl. 759, 765 (2018). A party cannot be prejudiced unless it first has a substantial chance of award. *Id.*

VA received three offers for its solicitation, which sought the lowest-priced, responsible and technically acceptable bidder. The plaintiff, Orbital, was the highest-priced bidder, behind CDS and Epic. Orbital first claims that the solicitation was "defective because it lacked, or was ambiguous as to, licensure and other responsibility requirements." Pl.'s Mot. at 7. Additionally, Orbital alleges that CDS did not have adequate financial capacity or performance history to

satisfy the responsibility determination, and that both CDS and Epic lacked the proper licenses. *See id.* at 7-11. These oversights, Orbital argues, would have led to an increase in both CDS's and Epic's prices such that Orbital would have had a substantial chance of award. *See id.* at 10-11. The government argues in opposition that Orbital has waived its right to challenge the defects in the solicitation. *See* Def.'s Cross-Mot. at 14. Alternatively, the government argues that even assuming the award to CDS was improper, Orbital has failed to show how Epic would not be next in line for award. *See id.* at 10-11.

The issue of waiver of Orbital's challenge to aspects of the solicitation is a secondary one in this litigation because the court finds that Orbital jurisdictionally lacks standing to pursue its claims.[6] To prevail, Orbital must adequately challenge "the bona fides of each of the other [two] offeror's eligibility or the solicitation as a whole." *Universal Marine Co., K.S.C. v. United States*, 120 Fed. Cl. 240, 248 (2015). Even if Orbital's challenges were sufficient to remove CDS from contention, Orbital has failed to show how it would then have a substantial chance for this price-only award. Orbital's arguments regarding price increases in Epic's bid "if the [s]olicitation was defect-free," *see* Pl.'s Mot. at 10-11, are unavailing, because they are highly speculative. Orbital has not provided any evidence to support a finding that Epic's (or for that matter, CDS's) bid prices would have increased due to changes in the procurement's licensing and responsibility requirements. Allegations of defects in the procurement, supported by only mere speculation, are not enough to confer standing. *See Bannum*, 404 F.3d at 1358 (rejecting offeror's claims about what the agency might do in a new procurement as too conjectural to

---

[6]The government argues that Orbital waived its right to challenge defects in the solicitation, including those alleged here, because it failed to object to the terms prior to close of the bidding process. *See* Def.'s Cross-Mot. at 14 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007)). The bidding process for the original solicitation closed on September 4, 2018. AR 10-72. Orbital argues that due to a teaming agreement with the incumbent, Stafford Environmental Services, Inc., *see* AR 13-147; *see also* Hr'g Tr. 6:6-13, Orbital should be considered as having raised its arguments with the contracting officer as early as August 24, 2018, *see* Pl.'s Reply at 10 (citing email from Jeff Stafford to Kevin Vo, *see* AR 53-912 to 917). This email, with a subject line reading "Solicitation 36C26218Q9882, Questions," *see* AR 53-912, does not appear to be an actual agency protest, but simply just an inquiry. Further, in addition to lacking any mention of Orbital in the body of this email, *see* AR 53-913 to 917, the teaming agreement between Orbital and Stafford was not in effect until after this email was sent, *see* AR 13-147 (signed on Sept. 4, 2018). The only other evidence Orbital has put forth of its protests are emails from Orbital's counsel to the contracting officer, dated May 2, 2019, *see* AR 49-768, which Orbital argues raises all of the solicitation defects alleged here with the agency, including awardee-responsibility grounds. Nonetheless, the objections Orbital raises to the solicitation stem from the original solicitation and the second amendment issued October 12, 2018, *see* Hr'g Tr. 39:13 to 40:12, and at that point bids were due October 26, 2018, AR 19-248 to 250. VA made an award on December 17, 2018, and Orbital filed an agency protest regarding that award, but on licensing grounds, not on the basic terms of the solicitation that Orbital now seeks to raise. *See supra*, at 3. The agency then withdrew the contract award, reconsidered, reopened bidding, issued further amendments to the solicitation, and ultimately made the award to CDS that is at issue in this protest. In sum, Orbital's protest of the basic terms of the solicitation comes much too late.

confer standing); *SOS Int'l LLC v. United States*, 127 Fed. Cl. 576, 588 (2016) (finding plaintiff's allegations that it would have been next in line as merely speculative and inadequate to support standing).

Additionally, Orbital specifically argues that Epic failed to submit the proper proof of registration and licenses as required by the solicitation. *See* AR 37-548. But Orbital suffered from the same defect in failing to submit proof of at least one of the required licenses listed in the solicitation. *See* AR 42-673 to 681 (failing to include the Department of Pesticide Regulation – Qualified Applicator License Category A – Residential, Industrial and Institutional License). If, as Orbital suggests, this omission would render Epic ineligible for award, then Orbital, too, would be ineligible. Thus, this alleged procurement defect would prevent the plaintiff from meeting its burden of "show[ing] that it would have been a qualified bidder." *CliniComp*, 904 F.3d at 1358 (quoting *Myers*, 275 F.3d at 1370-71).

The basis for the award here was the lowest-priced technically acceptable bid. Orbital offered the highest-priced technically acceptable bid. None of the alleged defects in the procurement are sufficient to show that despite the price disparity, Orbital would have a substantial chance of award. Therefore, Orbital has not demonstrated a direct economic interest and consequently lacks standing to protest this contract award.

## CONCLUSION

For the foregoing reasons, the court finds that Orbital lacks standing to protest the procurement award. Accordingly, defendant's motion to dismiss is GRANTED. Plaintiff's and defendant's motions for judgment on the administrative record are therefore both DENIED as moot. The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge